UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                        :

COSTAR GROUP, INC.,

                            Plaintiff,     No. 08-CV-1156 (GBD)

                                      :

               v.

                                      :   **ANSWER**

LOOPNET, INC.,

                            Defendant.   :
--------------------------------------------------------X

        Defendant LoopNet Inc. ("LoopNet"), as and for its Answer to Plaintiff CoStar Group, Inc.'s ("CoStar") Complaint, states as follows:

        1.     LoopNet admits that the Complaint purports to be an action for false advertising, and that the Complaint invokes Section 43(a) of the Lanham Act. LoopNet otherwise denies the allegations in paragraph 1 of the Complaint.

        2.     LoopNet admits that it is an information services company that operates the leading online marketplace for commercial real estate in the country. LoopNet otherwise denies the allegations in paragraph 2 of the Complaint.

        3.     LoopNet denies the allegations in paragraph 3 of the Complaint.

        4.     LoopNet admits that the statements on LoopNet's website and in LoopNet's press releases are accurate and truthful, and, taken in context, speak for themselves. CoStar's allegations regarding Mr. Boyle's alleged statements provide no information regarding the time, place, or manner in which these alleged statements were made; after reasonably diligent investigation, LoopNet does not have sufficient knowledge and information at this time to form a belief as to whether Mr. Boyle made these alleged statements and on that basis LoopNet denies them. LoopNet otherwise denies the allegations in paragraph 4 of the Complaint.

5.    LoopNet admits that the partially-quoted statement from the "Success Stories" has appeared, along with the rest of the statement and other statements, on LoopNet's website, and that this statement, taken in context, speaks for itself. After reasonably diligent investigation, LoopNet has been unable to locate any material that recites the statement alleged by CoStar to be found in a brochure called "Premium Membership for Professionals"; therefore, LoopNet does not have sufficient knowledge and information at this time to form a belief as to the truth of the allegation and on that basis denies the allegation. LoopNet otherwise denies the allegations in paragraph 5 of the Complaint.

6.    LoopNet admits that the quoted words have appeared on its website and that the referenced material, taken in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 6 of the Complaint.

7.    LoopNet admits that certain of its brochures have stated the reach of LoopNet's service to real estate professionals and that those statements, taken in context, speak for themselves. After reasonably diligent investigation, LoopNet has been unable to locate any material that recites the statement alleged by CoStar to be found in a brochure called "LoopNet Product Summary"; therefore, LoopNet does not have sufficient knowledge and information at this time to form a belief as to the truth of the allegation and on that basis denies the allegation. LoopNet otherwise denies the allegations in paragraph 7 of the Complaint.

8.    LoopNet is informed and believes that the New York Times website currently posts an article dated February 3, 2008 that states, among other statements, that Mr. Byrne had made the statement alleged. With respect to allegations regarding alleged statements made by Mr. Boyle during "a November 2006 conference call," CoStar has not provided sufficient information to identify which conference call the allegations refer to and when the alleged

statements were made. Despite reasonably diligent investigation, LoopNet has not been able to locate evidence of the alleged statement; therefore, LoopNet does not have sufficient information or knowledge at this time to form a belief as to the truth of the allegations and on that basis denies the allegations. Whatever Mr. Boyle has stated in a conference call, when taken in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 8 of the Complaint.

9.      After reasonably diligent investigation, LoopNet has been unable to locate evidence of the oral statements allegedly attributed to Mr. Boyle, and therefore lacks sufficient knowledge and information at this time to form a belief as to whether Mr. Boyle made the alleged oral statements and on that basis LoopNet denies them. LoopNet otherwise denies the allegations in paragraph 9 of the Complaint.

10.     LoopNet admits that its term "registered members" has the meaning commonly understood in its industry. LoopNet otherwise denies the allegations in paragraph 10 of the Complaint.

11.     LoopNet admits that it has allowed members to register with its service during the years that it has provided that service to the public and that its registered members are constituted as commonly understood in the industry. LoopNet otherwise denies the allegations in paragraph 11 of the Complaint.

12.     LoopNet admits that, as its registered membership has grown and continues to grow, it has variously reported publicly on its total number of registered member accounts, which totaled approximately 2 million in April 2007 and 2.5 million in November of 2007. LoopNet otherwise denies the allegations in paragraph 12 of the Complaint.

13.    LoopNet is informed and believes that third-party website RetailTraffic currently

has an online post that contains, among other statements, the alleged quote made by a third-party

poster.  See http://retailtrafficmag.com/management/technology/technology_bit_byte/index.html.

LoopNet admits that its website, it quotes third-party California Real Estate Journal's report of

April 19, 2007, wherein that third-party stated, among other statements:  "According to Comscore,

which tracks Internet activity, LoopNet has 1.77 million registered users, with 875,000 unique

users per month in 2006." LoopNet is informed and believes that the third-party Virtual Earth

website currently contains the words alleged in a blog posting dated April 27, 2006 under the

header "Solution Highlight:  LoopNet," which are quoted out of context.  This third-party blog

posting refers to part of LoopNet's LoopLink technology, and not to LoopNet's main site

accessible at www.LoopNet.com.  The third-party blogger states:  "LoopNet's [LoopLink]

solution powers over 1000 websites used by over 1.2 million members. " *See*

http://blogs.msdn.com/virtualearth/archive/2006/04/27/585614.aspx.  LoopNet does not have

sufficient information or knowledge to confirm the accuracy of this third-party statement and on

that basis denies it.  LoopNet also is informed and believes that, in a third-party internet posting

currently available on the internet entitled "Guide to Real Estate and Construction for Small

Business" and attributed to third-party LaRita M. Heet, the third-party poster's statements of

opinion recite the words alleged by CoStar.  *See*

http://www.business.com/directory/real_estate_and_construction/.  LoopNet lacks sufficient

knowledge and information to form a belief as to the truth of CoStar's allegations regarding

purported statements made by unnamed sources and on that basis LoopNet denies these

allegations.  LoopNet otherwise denies the allegations in paragraph 13 of the Complaint.

14.    LoopNet is informed and believes that third-party website StartupReview.com currently has a posting dated June 3, 2007 attributed to a Mr. Rob Finn, that contains the words selectively quoted out of context by CoStar in its allegation. In the posting, the author continues to opine that the statements CoStar alleges evidence falsity are in fact "absolutely true." *See* http://www.startup-review.com/blog/loopnet-case-study-partnerships-build-data-asset.php. LoopNet otherwise denies the allegations in paragraph 14 of the Complaint.

15.    LoopNet admits that it is a publicly-traded company subject to the legal requirements applicable to public companies. LoopNet is informed and believes that the third-party report exists and contains, among other statements, the words CoStar selectively quotes. LoopNet lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Jeffrey and Mr. Ancich, including their respective states of mind, and on this basis denies these allegations. LoopNet otherwise denies the allegations in paragraph 15 of the Complaint.

16.    LoopNet is informed and believes that the third-party press release exists and contains, among other statements, the words CoStar selectively quotes. LoopNet lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Fuller and Mr. Forrester, including their respective states of mind, and on this basis denies these allegations. LoopNet otherwise denies the allegations in paragraph 16 of the Complaint.

17.    LoopNet is informed and believes that there exists a third-party website named "The Motley Fool." LoopNet lacks knowledge or information sufficient to form a belief as to whether that website is "influential" and therefore denies it. LoopNet denies that it has made alleged "false claims," and therefore denies that The Motley Fool website has been misled by any

such alleged false claims. LoopNet otherwise denies the allegations in paragraph 17 of the Complaint.

18.    LoopNet is informed and believes that, in a third-party posting dated on December 31, 2007 and attributed to Katrina Chan that is currently available on the third-party The Motley Fool website (www.fool.com), the third-party posts, among other statements, the words selectively quoted by CoStar. LoopNet lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the third-party website's, its employees' or contributors' respective states of mind, and on this basis denies them. LoopNet otherwise denies the allegations in paragraph 18 of the Complaint.

19.    LoopNet is informed and believes that the words selectively quoted by CoStar currently appear, among other statements, in third-party internet postings on the third-party website The Motley Fool, dated as alleged by CoStar and with bylines as alleged by CoStar. LoopNet lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the third-party website's employees' or contributors' respective states of mind, and on this basis denies them. LoopNet otherwise denies the allegations in paragraph 19 of the Complaint.

20.    LoopNet is informed and believes that the words selectively quoted by CoStar currently appear, among other statements, in third-party internet postings on the third-party website The Motley Fool, dated as alleged by CoStar and with bylines as alleged by CoStar. LoopNet lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the third-party website's, its employees' or contributors' respective states of mind, and on this basis denies them. LoopNet otherwise denies the allegations in paragraph 20 of the Complaint.

21.    LoopNet is informed and believes that the third-party website www.PaperClipCMS.com currently has a posting dated June 1, 2007 under the heading "LoopNet: Successful Commercial Website" that includes, among other statements, the words selectively quoted by CoStar. LoopNet is informed and believes that the third-party website TheStreet.com's "stockpickr" blog (www.stockpickr.com) currently posts a blog entry dated April 29, 2007 and purportedly made under the name "sarah z" that includes, among other statements, the words selectively quoted by CoStar. LoopNet also is informed and believes that the third-party Forbes website (www.forbes.com) currently has an entry dated June 2, 2006 under the byline of Scott Reeves that contains, among other statements, the words selectively quoted by CoStar. Despite a reasonably diligent search, LoopNet has been unable to locate evidence of the existence of a purported TheStreet.com video commentary dated July 17, 2007 by Lindsay Campbell or of a quote matching that purportedly attributed by CoStar to the Urban Land Institute newsletter, and as such, LoopNet lacks knowledge or information sufficient to form a belief as to the truth of these allegations and on this basis denies them. LoopNet also lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the third-party websites', their employees' or contributors' respective states of mind, and on this basis denies them. LoopNet otherwise denies the allegations in paragraph 21 of the Complaint.

22.    After reasonably diligent investigation, LoopNet has not located the third-party material purportedly quoted by CoStar, and therefore LoopNet lacks knowledge or information sufficient to form a belief as to the truth of these allegations and on this basis denies them. LoopNet otherwise denies the allegations in paragraph 22 of the Complaint as stated.

23.    LoopNet denies that it has cultivated any false impressions through its public statements and presentations, or otherwise. There is, therefore, nothing for LoopNet to correct. LoopNet otherwise denies the allegations in paragraph 23 of the Complaint

24.    LoopNet admits that its June 2006 Prospectus contains, among many other statements, the words selectively quoted by CoStar and that those statements, taken in context, speak for themselves. LoopNet admits that its term "registered members" has the meaning as commonly understood in its industry. LoopNet otherwise denies the allegations in paragraph 24 of the Complaint.

25.    LoopNet admits that it obtains information regarding website usage, some of which is publicly disclosed. LoopNet otherwise denies the allegations in paragraph 25 of the Complaint.

26.    LoopNet admits that it has worked diligently to promote its business and its customers' property listings. LoopNet otherwise denies the allegations in paragraph 26 of the Complaint.

27.    LoopNet admits that it has previously has included, among other statements, the words selectively quoted by CoStar on the "Basic Membership Reference Guide" portion of its website, and that the referenced material, taken in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 27 of the Complaint.

28.    LoopNet admits that the words selectively quoted by CoStar in its allegation are found on LoopNet's "Self-Service Support" area of its website, and that the referenced material, taken in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 28 of the Complaint.

29.    LoopNet admits that its November 14, 2007 press release contains, among other statements, the words selectively quoted by CoStar, and that the referenced material, taken in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 29 of the Complaint.

30.    LoopNet denies the allegations in paragraph 30 of the Complaint.

31.    LoopNet admits that it conducted an initial public offering of its stock in June 2006; that, in accordance with its business activities, it issued press releases on the referenced dates that accurately made reference to the total number of registered members; and that the referenced material, taken in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 31 of the Complaint.

32.    LoopNet denies the allegations in paragraph 32 of the Complaint.

33.    LoopNet admits that Mr. Boyle has been LoopNet's CEO and that, as and to the extent reported in public SEC Form 4 filings, and on terms disclosed in those filings, certain sales of stock occurred that were effected pursuant to a Rule 10b5-1 trading plan adopted by Mr. Boyle or as a selling shareholder at the time of LoopNet's initial public offering. LoopNet otherwise denies the allegations in paragraph 33 of the Complaint.

34.    LoopNet admits that Mr. Stumme has been LoopNet's CFO and that, as and to the extent reported in public SEC Form 4 filings, and on terms disclosed in those filings, certain sales of stock occurred that were effected pursuant to a Rule 10b5-1 trading plan adopted by Mr. Stumme or as a selling shareholder at the time of LoopNet's initial public offering. LoopNet otherwise denies the remaining allegations in paragraph 34 of the Complaint.

35.    LoopNet admits that Mr. Byrne has been LoopNet's Chief Marketing Officer and that, as and to the extent reported in public SEC Form 4 filings, and on terms disclosed in those

filings, certain sales of stock occurred that were effected pursuant to a Rule 10b5-1 trading plan adopted by Mr. Byrne or as a selling shareholder at the time of LoopNet's initial public offering. LoopNet otherwise denies the allegations in paragraph 35 of the Complaint.

36.    LoopNet admits that Mr. Warthen has been LoopNet's Chief Technology Officer and that, as and to the extent reported in public SEC Form 4 filings, and on terms disclosed in those filings, certain sales of stock occurred that were effected pursuant to a Rule 10b5-1 trading plan adopted by Mr. Warthen or as a selling shareholder at the time of LoopNet's initial public offering.  LoopNet otherwise denies the allegations in paragraph 36 of the Complaint.

37.    LoopNet admits that Mr. Greenman has been LoopNet's Chief Product Officer and that, as and to the extent reported in public SEC Form 4 filings, and on terms disclosed in those filings, certain sales of stock occurred that were effected pursuant to a Rule 10b5-1 trading plan adopted by Mr. Greenman or as a selling shareholder at the time of LoopNet's initial public offering.  LoopNet otherwise denies the allegations in paragraph 37 of the Complaint.

38.    LoopNet denies the allegations in paragraph 38 of the Complaint.

39.    LoopNet denies the allegations in paragraph 39 of the Complaint.

40.    LoopNet admits that CoStar purports to demand the stated remedies, but otherwise denies the allegations in paragraph 40 of the Complaint.

41.    Upon information and belief, LoopNet admits that CoStar is a Delaware corporation with its principal place of business and corporate offices at 2 Bethesda Metro Center, Bethesda, MD 20814-5388.  LoopNet otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint, and on this basis denies them.

42.    LoopNet admits the allegations in paragraph 42 of the Complaint.

43.    Paragraph 43 of the Complaint pleads issues of law and therefore requires no response.

44.    Paragraph 44 of the Complaint pleads issues of law and therefore requires no response.

45.    LoopNet denies the allegations of paragraph 45 of the Complaint as stated, but admits that CoStar purports to be a provider of information services to commercial real estate professionals in the United States.

46.    LoopNet denies the allegations of paragraph 46 of the Complaint as stated, but admits that CoStar is one of its competitors, and that LoopNet offers information and marketing services relating to commercial real estate.

47.    LoopNet denies the allegations in paragraph 47 of the Complaint as stated, except admits that it offers "Basic" and "Premium" memberships, and that the terms of these memberships, taken in context, speak for themselves.

48.    LoopNet admits that, as part of its business activities, it engages in advertising and promotion, and that its advertisements and promotions are accurate and truthful and speak for themselves.  LoopNet otherwise denies the allegations in paragraph 48 of the Complaint.

49.    LoopNet admits that, in its public statements, it has accurately and truthfully described itself and its membership.  LoopNet otherwise denies the allegations in paragraph 49 of the Complaint.

50.    LoopNet denies the allegations in paragraph 50 of the Complaint as stated, except that it admits that the selectively quoted words have previously appeared on its website and that the referenced material, taken in context, speaks for itself.

51.    After reasonably diligent investigation, LoopNet has been unable to locate any material that recites the words alleged by CoStar to be found in a brochure called "Premium Membership for Professionals"; therefore, LoopNet does not have sufficient knowledge and information at this time to form a belief as to the truth of the allegations and on that basis denies these allegations.  LoopNet otherwise denies the allegations in paragraph 51 of the Complaint.

52.    LoopNet admits the allegations in paragraph 52 of the Complaint.

53.    LoopNet denies the allegations in paragraph 53 of the Complaint as stated, except admits that the selectively quoted words have previously appeared on its website and that the referenced material, taken in context, speaks for itself.

54.    LoopNet admits the allegations in paragraph 54 of the Complaint.

55.    LoopNet denies the allegations in paragraph 55 of the Complaint as stated, except admits that the quoted words have previously appeared on its website and that the referenced material, taken in context, speaks for itself.

56.    LoopNet denies the allegations in paragraph 56 of the Complaint as stated, except admits that the selectively quoted words have previously appeared on its website and that the referenced material, taken in context, speaks for itself.

57.    LoopNet denies the allegations in paragraph 57 of the Complaint as stated, except admits that its number of registered members, and the growth of that number, are among the important statistics that it has accurately and truthfully disclosed in public filings, which speak for themselves.

58.    LoopNet denies the allegations in paragraph 58 of the Complaint as stated, except admits that its August 22, 2006 press release contains, among other statements, the words selectively quoted by CoStar and that the referenced material, taken in context, speaks for itself.

59.    LoopNet admits the allegations in paragraph 59 of the Complaint.

60.    LoopNet admits the allegations in paragraph 60 of the Complaint.

61.    LoopNet does not have sufficient information or knowledge to ascertain how CoStar defines "marketplace" and the extent to which that "marketplace" relies on any particular information; therefore, on that basis, LoopNet denies allegation. LoopNet is informed and believes that third-parties the New York Times online and Zacks.com currently have entries purportedly dated with the respective dates alleged that contain the words, among other statements, that CoStar has selectively quoted. LoopNet admits that it has a large and growing number of registered members. LoopNet otherwise denies the allegations in paragraph 61 of the Complaint.

62.    LoopNet is informed and believes, based on what is currently available on the internet, that the third-party Michigan Business Review ran an article dated June 14, 2007 that contained the words, among other statements, quoted by CoStar. LoopNet is informed and believes that this purported "quote" does not actually quote any statement Mr. Byrne ever made verbatim, and on that basis, LoopNet denies the allegation. LoopNet otherwise denies the allegations in paragraph 62 of the Complaint.

63.    LoopNet denies the allegations in paragraph 63 of the Complaint as stated, except admits that its website has previously contained, among other statements, the words selectively quoted by CoStar, and that the referenced material, taken in context, speaks for itself.

64.    LoopNet is informed and believes that the RCA Report is a commercial real estate journal published by the National Association of Realtors. LoopNet admits that it sponsored the referenced advertisement and that the advertisement contained, among other statements, the

words that CoStar has selectively quoted, and that the referenced material, in context, speaks for itself. LoopNet otherwise denies the allegations in paragraph 64 of the Complaint.

65.    LoopNet is informed and believes that the material referenced in the allegation is a third-party case study initially drafted by Microsoft, which contains the words selectively quoted in the allegation, and to which Microsoft later appended LoopNet's logo. LoopNet otherwise denies the allegations in paragraph 65 of the Complaint.

66.    LoopNet admits that Mr. Boyle made, among other statements, the alleged statement or one similar to it during a conference call on August 2, 2007, and that, taken in context, Mr. Boyle's statements speak for themselves. LoopNet otherwise denies the allegations in paragraph 66 of the Complaint.

67.    After reasonably diligent investigation, LoopNet has been unable to ascertain the accuracy of the quote attributed to Mr. Boyle; therefore, LoopNet lacks knowledge or information at this time sufficient to form a belief as to the truth of these allegations, and on this basis LoopNet denies them. LoopNet admits that it participated in a conference call on October 24, 2007 during which Mr. Boyle spoke and that Mr. Boyle's comments, taken in context, speak for themselves. LoopNet otherwise denies the allegations in paragraph 67 of the Complaint.

68.    After reasonably diligent investigation, LoopNet has been unable to ascertain the accuracy of the quote attributed to Mr. Boyle; therefore, at this time LoopNet lacks knowledge or information sufficient to form a belief as to the truth of these allegations, and on this basis LoopNet denies them. LoopNet admits that public comments made by Mr. Boyle, taken in context, speak for themselves. LoopNet otherwise denies the allegations in paragraph 68 of the Complaint.

69.    CoStar's allegations regarding Mr. Boyle's alleged statements provide insufficient information regarding the time, place, or manner in which these alleged statements were made; after reasonably diligent investigation, LoopNet does not have sufficient knowledge and information at this time to form a belief as to whether Mr. Boyle made these alleged statements and on that basis LoopNet denies them.  LoopNet admits that, in emails to customers, it has previously used, among other statements, the words selectively quoted by CoStar, and that, taken in context, those emails speak for themselves.  LoopNet otherwise denies the allegations in paragraph 69 of the Complaint.

70.    LoopNet denies the allegations in paragraph 70 of the Complaint.

71.    LoopNet denies the allegations in paragraph 71 of the Complaint.

72.    LoopNet denies the allegations in paragraph 72 of the Complaint.

73.    LoopNet denies the allegations in paragraph 73 of the Complaint.

74.    LoopNet denies the allegations in paragraph 74 of the Complaint.

75.    LoopNet denies the allegations in paragraph 75 of the Complaint.

76.    LoopNet admits that it has made accurate and truthful public statements regarding its growth, and that those statements, taken in context, speak for themselves.  LoopNet otherwise denies the allegations in paragraph 76 of the Complaint.

77.    LoopNet denies the allegations in paragraph 77 of the Complaint.

78.    LoopNet admits that, as part of its business activities, it engages in marketing, and that in conjunction therewith, it has made accurate and truthful statements.  LoopNet otherwise denies the allegations in paragraph 78 of the Complaint.

79.    LoopNet denies the allegations in paragraph 79 of the Complaint as stated. LoopNet admits that it maintains a website, and has issued press releases, email newsletters, and marketing materials, which speak for themselves.

80.    LoopNet is informed and believes that various third-party sources have included mention of or reference to information related to LoopNet's business. LoopNet otherwise denies the allegations in paragraph 80 of the Complaint.

81.    LoopNet denies the allegations in paragraph 81 of the Complaint.

82.    LoopNet is informed and believes that the third-party report alleged by CoStar includes, among other statements, the words selectively quoted by CoStar. LoopNet lacks knowledge or information sufficient to form a belief as to the allegation regarding the states of mind of securities analysts including Heath Terry and Andrew Thomas, and therefore denies those allegations. LoopNet otherwise denies the allegations in paragraph 82 of the Complaint.

83.    LoopNet denies the allegations in paragraph 83 of the Complaint.

### RESPONSES TO COUNT I

84.    LoopNet incorporates by reference its responses to the allegations in paragraphs 1 through 83 of the Complaint as stated above.

85.    LoopNet admits that its services are offered in interstate commerce, and otherwise denies the allegations in paragraph 85 of the Complaint.

86.    LoopNet denies the allegations in paragraph 86 of the Complaint.

87.    LoopNet denies the allegations in paragraph 87 of the Complaint.

88.    LoopNet denies the allegations in paragraph 88 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

CoStar fails to state a valid claim upon which relief may be granted.

### Second Affirmative Defense

CoStar's claim is barred by the doctrine of laches.

### Third Affirmative Defense

CoStar's claim is barred in whole or in part by the statute of limitations.

### Fourth Affirmative Defense

CoStar's claim is barred by the doctrine of estoppel.

### Fifth Affirmative Defense

CoStar's claim is barred by the doctrine of unclean hands.

### Sixth Affirmative Defense

CoStar has in whole or in part released by contract the right to bring these claims.

### Seventh Affirmative Defense

CoStar's claim is barred by the doctrine of waiver.

### JURY TRIAL DEMAND

LoopNet hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, LoopNet prays for judgment, in favor of LoopNet and against CoStar:

(a)     Dismissing with prejudice CoStar's Complaint against LoopNet;

(b)     Pursuant to 15 U.S.C. § 1117(a)(3), awarding LoopNet its reasonable attorneys' fees, expenses, and costs; and,

(c)    Awarding such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         March 27, 2008

                        CURTIS, MALLET-PREVOST,
                        COLT & MOSLE LLP


                   By: _____
                        Jacques Semmelman (JS 5020)
                        101 Park Avenue
                        New York, NY 10178-0061
                        Tel.: 212-696-6000
                        Fax: 212-697-1559
                        jsemmelman@curtis.com

                        *Attorneys for Defendant*
                        *LoopNet, Inc.*


*Of Counsel:*

Elliot Brown (*pro hac vice pending*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel.: (310) 277-1010
Fax: (310) 203-7199
ebrown@irell.com