Jacques Semmelman (JS 5020)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
Tel: 212-696-6000
Fax: 212-697-1559
*Attorneys for Defendant and Counterclaim Plaintiff LoopNet, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
COSTAR GROUP, INC.,                                         :
                                                            :
                     Plaintiff,    No. 08-CV-1156 (GBD) (GWG)
                                                            :
      v.
                                                            :
LOOPNET, INC.,
                                                            :
                     Defendant           :
                     and Counter-
                     Plaintiff.
------------------------------------------------------------X
                                                            :
LOOPNET, INC.,                                              :
                                                            :
                     Counterclaim
                     Plaintiff,
                                                            :
      v.

COSTAR GROUP, INC., and COSTAR
REALTY INFORMATION, INC.,

                     Counterclaim   :
                     Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN AID OF LOOPNET'S
MOTION FOR EXPEDITED DISCOVERY RELATING TO
<u>LOOPNET'S MOTION FOR A PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................2

BACKGROUND ............................................................................................................................3

ARGUMENT ..................................................................................................................................3

I. Standard for Expedited Discovery................................................................................3

II. LoopNet Is Entitled To Narrow Expedited Discovery To Support Its
Motion For a Preliminary Injunction............................................................................5

    A. LoopNet's Motion for a Preliminary Injunction Is Well Founded ................5

        1. Overview of the Online Real Estate Listing Market .........................5

        2. CoStar's False Advertisements..........................................................6

    B. LoopNet Seeks Narrow Discovery In Support Of Its Motion For A
Preliminary Injunction ......................................................................................8

    C. There Is Good Cause To Order The Expedited Discovery Sought
By LoopNet .......................................................................................................10

        1. Good Cause Exists For LoopNet's Limited Discovery ....................10

        2. The Discovery Sought Is Reasonable In Scope And Burden
And Will Cause Minimal Prejudice to CoStar ................................11

        3. LoopNet's Request for Discovery Would Also Satisfy the
Notaro Standard .................................................................................12

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ayyash v. Bank Al-Madina*,
    233 F.R.D. 325 (S.D.N.Y. 2005) .................................................................................. 3, 4, 10

*Dimension Data North America, Inc. v. NetStar-1, Inc.*,
    226 F.R.D. 528 (E.D.N.C. 2005) ........................................................................................... 4

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
    194 F.R.D. 618 (N.D. Ill. 2000) ............................................................................................ 4

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ....................................................................................... 4, 13

*OMG Fidelity, Inc. v. Sirius Tech., Inc.*,
    239 F.R.D. 300 (N.D.N.Y. 2006) ........................................................................................ 12

*Sheridan v. Oak St. Mortg., LLC*,
    244 F.R.D. 520 (E.D. Wisc. 2007) ........................................................................................ 4

*Stern v. Cosby*,
    246 F.R.D. 453 (S.D.N.Y. 2007) ....................................................................................... 3, 4

*Time Warner Cable, Inc. v. DirecTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ................................................................................................ 10

**Statutes**

Fed. R. Civ. P. 26 ............................................................................................................................. 2

Fed. R. Civ. P. 30 ............................................................................................................................. 2

Fed. R. Civ. P. 30(b)(6) ............................................................................................................... 2, 9

Fed. R. Civ. P. 34 ............................................................................................................................. 2

## PRELIMINARY STATEMENT

LoopNet, Inc. ("LoopNet"), defendant and counterclaim-plaintiff, respectfully submits this memorandum of law in support of its motion for expedited discovery pursuant to Rules 26, 30, and 34 of the Federal Rules of Civil Procedure. Today, in a concurrently filed motion, LoopNet has moved to preliminarily enjoin Defendants CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively "CoStar") from a recently initiated false advertising campaign directed specifically at LoopNet. To facilitate the preliminary injunction motion, LoopNet hereby seeks limited, highly relevant discovery, such as CoStar's purported sources for its false advertising claims, and copies of the CoStar advertising and marketing materials at issue. Specifically LoopNet requests that:

1. CoStar be ordered to produce, no later than July 15, 2008, the documents called for by LoopNet's Second Set Of Requests for Production of Documents submitted herewith as Exhibit A[1]; and

2. CoStar be ordered produce, by no later than July 24, 2008, a witness for deposition pursuant to Fed. R. Civ. P. 30(b)(6), who is knowledgeable concerning each of the subjects set forth in the Notice of Deposition submitted herewith as Exhibit B.

The discovery sought by this motion is highly relevant to the co-pending motion for preliminary injunction. There is good cause to order its production on an expedited basis so the Court can ascertain the full extent of CoStar's wrongdoing and define the appropriate scope of the preliminary injunction to prevent continuing irreparable harm to LoopNet and the public. LoopNet accordingly respectfully requests that this Motion be granted.

---

[1] Exhibits are annexed to the accompanying Affidavit of Jacques Semmelman, counsel for LoopNet.

## BACKGROUND

Approximately five months ago, on February 5, 2008, CoStar initiated this suit. In the subsequent intervening months, CoStar secretly finished preparations to launch and market a new product called "CoStar Showcase," a product that CoStar claims will compete directly with LoopNet's "core business."

CoStar began privately marketing CoStar Showcase to existing customers in April 2008. It later launched a public advertising campaign in conjunction with the May 15, 2008, Showcase product launch. Both the pre-launch and post-launch Showcase advertising materials that LoopNet has been able to obtain are rife with false statements about CoStar Showcase and its supposed comparative advantages over LoopNet's superior product.

LoopNet acted swiftly to counter CoStar's unlawful actions. On June 19, 2008, LoopNet served a counterclaim against CoStar, detailing CoStar's violations of § 43(a) of the Lanham Act and New York law, and seeking preliminary and permanent injunctive relief. Today, June 30, 2008, LoopNet filed its Motion for a Preliminary Injunction to enjoin CoStar's false advertising campaign. This Motion, in turn, seeks narrow, expedited discovery in support of LoopNet's Motion for a Preliminary Injunction.

## ARGUMENT

### I.   Standard for Expedited Discovery

Courts in this district apply a "flexible standard of reasonableness and good cause" to evaluate the propriety of expedited discovery. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005); *see also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (same standard) (granting motion to expedite discovery). "[I]t makes sense to examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash*, 233 F.R.D. at 326–27

(quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623–24 (N.D. Ill. 2000)) (emphasis in original).

Courts in this district sometimes also refer to the test for expedited discovery developed in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982). *Notaro* held that expedited discovery—in that case, deposition discovery—was only appropriate when the moving party showed:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Id.* at 405. It appears, however, that the *Notaro* test has recently fallen into disfavor, both within this Court and in other jurisdictions. *See, e.g., Ayyash*, 233 F.R.D. at 326-27 (adopting "reasonableness and good cause" standard instead of the *Notaro* test); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) ("More recently, courts have applied a more flexible standard of 'reasonableness' and 'good cause.'") (citing, *inter alia*, *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 194 F.R.D. at 623–24); *Dimension Data North America, Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) ("[A] standard based upon reasonableness or good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the Federal Rules of Civil Procedure."); *Sheridan v. Oak St. Mortg., LLC*, 244 F.R.D. 520, 522 (E.D. Wisc. 2007) ("The 'good cause' standard suggested by *Federal Practice and Procedure* and adopted by other district courts is a workable and practical standard and the circumstances of this case do not warrant the more stringent test of *Notaro*.").

For the reasons discussed below, LoopNet's motion for expedited discovery is well founded under both the current "flexible standard of reasonableness and good cause" as well as the stricter *Notaro* test.

## II. LoopNet Is Entitled To Narrow Expedited Discovery To Support Its Motion For a Preliminary Injunction

### A. LoopNet's Motion for a Preliminary Injunction Is Well Founded

The basis for LoopNet's Motion for a Preliminary Injunction is detailed in LoopNet's concurrently filed papers in support of that motion, to which the Court is respectfully referred. For the purposes of this motion, LoopNet presents the following brief summary.

#### 1. *Overview of the Online Real Estate Listing Market*

LoopNet and CoStar are the two leading companies providing commercial real estate information services on the internet. (*See* Semmelman Decl., Ex. C (CoStar Memorandum in Support of Motion for Preliminary Injunction ("CoStar Mem.")) 19; Semmelman Decl., Ex D (Declaration of CoStar CEO Andrew Florance in Support of CoStar's Motion for a Preliminary Injunction) ("Florance Decl.") ¶ 19.) Both LoopNet and CoStar offer commercial real estate listings online. LoopNet exposes its premium listings to free searches on its website and through popular search engines such as Google and Yahoo!. (LoopNet Memorandum in Aid of Motion for Preliminary Injunction ("LoopNet Mem.") 3.) CoStar, by contrast, had limited the exposure of its listings to paid subscribers. (*Id.*)

In a recent dramatic change of course, CoStar has decided to imitate LoopNet's approach, and to offer a product, called CoStar Showcase, that purportedly exposes listings to a broad online audience, rather than just to CoStar's subscriber base. As detailed in LoopNet's Motion for a Preliminary Injunction, CoStar was at a significant commercial disadvantage positioning Showcase against LoopNet for the simple reason LoopNet can

provide significantly greater exposure to listings online. (LoopNet Mem. 4.) According to data collected by firms that measure website traffic, LoopNet typically enjoys significantly more online traffic than CoStar. For example, according to comScore – a company that measures website traffic and whose data is used by both parties – the number of monthly unique visitors to LoopNet's website is typically 300% to 500% that of CoStar, and sometimes as much as 800% that of Costar. (LoopNet Mem. 2.)

In an unlawful attempt to overcome the competitive disadvantage flowing from the facts, CoStar commenced a concerted campaign of false advertising. LoopNet's motion for a preliminary injunction seeks to bring that false advertising campaign to a swift halt.

    2.    *CoStar's False Advertisements*

LoopNet's Motion for Preliminary Injunction identifies six categories of false statements made by CoStar in its attempt to deceive the public about CoStar's Showcase product.

**First**, CoStar has made false statements about website traffic statistics. CoStar has promised, for example, that Showcase will allow users to reach "over 400,000 prospects you won't find on LoopNet." (LoopNet Mem. 5-6.) CoStar attributes its claim to data and a "custom analysis" allegedly provided by comScore, an independent company that collects and sells information about internet traffic and website usage. LoopNet cannot be certain which specific comScore data and analysis CoStar purportedly relies upon. However, as explained in LoopNet's co-pending motion, comScore does not (and certainly does not claim to) analyze how many "prospects" visit CoStar, let alone how many "prospects" visit CoStar but never search for properties on LoopNet. Moreover, the comScore data shows CoStar receives nowhere near 400,000 total unique visitors every month—let alone that Showcase received that many "prospects." (*See* LoopNet Mem. 5 (156,000 total unique

visitors to CoStar in May 2008)). CoStar also claims that its service will deliver "1.3 million unique visitors each quarter." (LoopNet Mem. 5-6) In support of this claim, CoStar cites to "Omniture Q1 2008 CoStar.com data." (*Id.*) LoopNet does not have access to this data, but it is contradicted by the comScore traffic data CoStar previously cited as authoritative. Furthermore, CoStar's claim that this data is representative of CoStar traffic "each quarter" is also false. LoopNet is entitled to obtain discovery of sources and purported sources of CoStar's statements.

**Second**, CoStar has made false representations regarding Showcase's audience. (*See* LoopNet Mem. 6-7.) CoStar claims, for example, that 86% of the Showcase audience are "purchase decision makers and influencers for their firm." (LoopNet Mem. 6.) CoStar purports to base this claim on a survey conducted in 2007. CoStar has not revealed details of the survey that would enable the public to evaluate its significance, but CoStar's claim that the 2007 survey demonstrates the composition of the audience for Showcase appears to be false. (LoopNet Mem. 5-6.) LoopNet is entitled to obtain discovery of this survey and the responses to it.

CoStar also falsely claims that the Showcase audience consists entirely of "qualified prospects who are likely very very interested" in available real estate listings. (LoopNet Mem. 7.) Yet CoStar points to no basis for the claims that its website is frequented only by "qualified" prospects who are "very very interested" in completing transactions. LoopNet is entitled to CoStar's basis, if any, for this statement.

**Third**, CoStar falsely claims that it's service is "free" and "truly open." (LoopNet Mem. 7.) LoopNet is entitled to discover the basis for these statements, which appear to be false on their face given that Showcase is neither "free" nor "truly open." Rather Showcase

- 7 -

is a paid subscription service that is only available to customers who sign a contract with CoStar. (LoopNet Mem. 7, 18.)

**Fourth**, CoStar draws false comparisons to LoopNet. (*See* LoopNet Mem. 7-9.) CoStar claims both that it is "[t]he website brokers prefer 3 to 1" and that "75% of commercial real estate brokers prefer CoStar information products over other sources." CoStar asserts that the basis for these claims is a purported survey. (LoopNet Mem. 7) These claims appear to be false. LoopNet is entitled to discovery of the cited survey and responses thereto.

**Fifth**, CoStar makes false claims about Showcase's attributes. (*See* LoopNet Mem. 7-9.) For example, as detailed in LoopNet's Motion, CoStar claims that it features over 900,000 listings and that Showcase's "thousands of up-to-date, research-verified property listings . . . offer an enormously valuable resource." (LoopNet Mem. 10.) To the extent there is a factual basis for these statements, such sources are not publicly available. LoopNet is entitled to the basis for CoStar's statements.

**Sixth**, LoopNet's Motion details CoStar's false statements about Showcase's purported success. (*See* LoopNet Mem. 11.) CoStar claims that "[b]ased on the enthusiastic response CoStar Showcase received . . . it is clear there is substantial demand among commercial property professionals for a more effective way to marketing their property listings online." (*Id.*) LoopNet is entitled to the basis, if any, for this statement.

### B. LoopNet Seeks Narrow Discovery In Support Of Its Motion For A Preliminary Injunction

LoopNet seeks an order expediting limited discovery in support of its motion. The discovery requests are attached to the accompanying declaration of Jacques Semmelman, as Exhibits A (Request for Production of Documents) and B (Notice of Rule 30(b)(6) Deposition)). The discovery can be summarized as follows:

- 8 -

- **Expedited Requests for the Production of Documents.** LoopNet seeks narrow document discovery concerning the purported sources for CoStar's false claims and to establish the details of CoStar's false advertising campaign. *First*, LoopNet seeks the documents concerning the purported factual basis for CoStar's claims detailed in LoopNet's Motion. CoStar purports to rely on a number of surveys as well as data and reports from comScore and Omniture. LoopNet seeks discovery of the surveys, responses thereto, and the data and reports. This is a narrow set of non-privileged documents that should impose little burden to collect and produce on an expedited basis. *Second*, LoopNet seeks copies of CoStar's Showcase advertising and marketing materials and documents sufficient to determine to whom these materials have been disseminated. These documents would include copies of CoStar's Showcase advertising and marketing materials, training scripts for CoStar's sales staff, and documents sufficient to ascertain to whom the Showcase materials were disseminated. These documents will enable LoopNet to determine the specifics of CoStar's false advertising campaign. The burden of producing these documents is slight: LoopNet does not seek all documents relating to these categories. It only seeks documents sufficient to comprehensively determine how LoopNet has advertised Showcase.

- **Expedited 30(b)(6) Deposition Regarding The Extent, Sources, And Factual Bases For CoStar's Claims.** LoopNet seeks an expedited deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) covering the extent, sources, and/or factual bases for CoStar's claims catalogued in

- 9 -

LoopNet's Motion. LoopNet seeks to question CoStar regarding the purported basis and sources for each of the false statements at issue. Additionally, LoopNet seeks focused deposition discovery regarding how CoStar representatives have been marketing and advertising CoStar Showcase. This testimony will allow LoopNet to determine the extent and frequency of CoStar's false advertising campaign.

### C. There Is Good Cause To Order The Expedited Discovery Sought By LoopNet

LoopNet satisfies the "flexible standard of reasonableness and good cause" necessary for expedited discovery. *Ayyash*, 233 F.R.D. at 326. The document and deposition discovery sought by LoopNet is highly relevant to LoopNet's motion for a preliminary injunction and there is good cause to order its production on an expedited basis.

#### 1. *Good Cause Exists For LoopNet's Limited Discovery*

LoopNet's document requests and 30(b)(6) deposition topics relating to the basis for CoStar's various false advertising claims will enable LoopNet (and the Court) to ascertain the specifics of CoStar's false advertising campaign and to evaluate the falsity of CoStar's statements. For example, whether the sources cited by CoStar in fact support CoStar's claims is highly relevant to determining LoopNet's "likelihood of success on the merits." *See, e.g., Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007). Similarly, LoopNet's document requests and 30(b)(6) deposition topics will flesh out the details of CoStar's advertising and marketing for its Showcase product. CoStar admits that it developed Showcase specifically to compete with LoopNet; that decision is reflected in CoStar's comparative advertisements. (Florance Decl. ¶ 2.) LoopNet has been able to obtain some of CoStar's Showcase advertising and marketing materials, but discovery is necessary to obtain a full and accurate picture of CoStar's unlawful activities that should be

- 10 -

preliminarily enjoined. Copies of Showcase advertisements, Showcase marketing materials, and training scripts for employees tasked with selling Showcase will enable LoopNet and the Court to pin down the full extent of CoStar's campaign of false advertising and to fashion an appropriate injunction.

As detailed in LoopNet's Memorandum of Law in Support of Its Motion for a Preliminary Injunction, absent prompt action to stop CoStar's false advertising campaign, LoopNet and the public will suffer irreparable harm. (*See* LoopNet Mem. 12.) To enable the Court to promptly ascertain the scope of CoStar's unlawful conduct and to fashion a preliminary injunction of appropriate scope, it is imperative that the narrow discovery sought by LoopNet be ordered on an expedited basis. Accordingly, there is good cause to order the limited discovery sought herein.

> 2. *The Discovery Sought Is Reasonable In Scope And Burden And Will Not Cause Prejudice to CoStar*

LoopNet has narrowly tailored its discovery requests to focus on factual information the Court should consider in connection with LoopNet's motion for a preliminary injunction. LoopNet's document requests – *e.g.*, for copies of CoStar's Showcase advertisements, marketing materials, and the surveys and data sources cited in CoStar's advertisements – are narrow and discrete. The topics identified in LoopNet's 30(b)(6) notice are similarly narrow and focused on the CoStar's claims, and the purported basis for the CoStar claims, that are the subject of LoopNet's motion for a preliminary injunction.

Requiring CoStar to assemble and produce its Showcase advertising and marketing materials and the sources upon which its claims are allegedly based presents little burden for CoStar, particularly when one takes into account the fact that according to CoStar's CEO, "CoStar has made the launch of Showcase its most important business initiative for 2008." (Florance Decl. ¶ 40.)

The "reasonableness" of the discovery sought by LoopNet can also be evaluated by comparing the "potential prejudice which will be suffered by [defendants] if the [requested discovery] is permitted, and that which will be experienced by the plaintiff" if the discovery is denied. *OMG Fidelity, Inc. v. Sirius Tech., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006). These considerations also strongly favor LoopNet's request for expedited discovery. There is no cognizable prejudice to CoStar if it is required to produce the discovery at issue. CoStar in engaging in an aggressive campaign to disseminate the advertising and marketing at issue, and CoStar is certainly not harmed if LoopNet and the Court are able to obtain a complete picture of the Showcase advertising campaign. Nor is CoStar prejudiced if it is required to provide the surveys, data, and reports its advertising specifically cites as the source for CoStar's false claims.

By contrast, LoopNet will be prejudiced if it is not able to obtain the expedited discovery sought herein. Without expedited discovery concerning the sources CoStar cites as the basis for its claims – *e.g.*, the surveys, data and reports cited in CoStar's advertisements – neither LoopNet nor the Court will be able to fully test CoStar's claims. Moreover, absent a complete picture of CoStar's advertising and marketing activities, LoopNet will be prejudiced in obtaining preliminary relief that fully and adequately addresses CoStar's false advertising campaign.

       3.    *LoopNet's Request for Discovery Would Also Satisfy the* Notaro *Standard*

While more recent decision by judges in the Southern District have gravitated to the "good cause" and "reasonableness" standard, for the same reasons described above, LoopNet also satisfies the *Notaro* standard. First, LoopNet faces irreparable injury from CoStar's ongoing false advertisements which are either directed explicitly at LoopNet or are in support of Showcase, a product CoStar created to compete with LoopNet. As discussed

in LoopNet's Memorandum in Support of its Motion for a Preliminary Injunction, LoopNet faces irreparable harm from, *inter alia*, the loss of customers and goodwill due to CoStar's advertising. (*See* LoopNet Mem. 21-25.)  Second, for the reasons detailed above and in LoopNet's Memorandum, LoopNet has more than "some probability of success on the merits." *Notaro*, 95 F.R.D. 405. Rather, CoStar's statements are facially false or unsupported by the documents to which CoStar cites. Third, the expedited discovery relates directly to the "avoidance of irreparable injury." *Id.* The documents and deposition testimony sought on an expedited basis relate directly to the basis of and extent of CoStar's false statements. Finally, as noted above, the injury to CoStar if the expedited discovery is granted will be non-existent and the burden minimal – CoStar need only produce a highly focused set of documents and prepare a deponent on defined 30(b)(6) deposition topics. In contrast, the harm to LoopNet if this discovery is denied would be substantial, as it could impact the scope of the preliminary injunction.

## CONCLUSION

For the forgoing reasons, this Court should issue an order directing CoStar to respond in an expedited manner to the discovery demands served herewith.

Dated: New York, New York
       June 30, 2008

                                      CURTIS, MALLET-PREVOST,
                                      COLT & MOSLE LLP

By: /s/ Jacques Semmelman
Jacques Semmelman (JS 5020)
101 Park Avenue
New York, NY  10178-0061
Tel.: 212-696-6000
Fax: 212-697-1559
jsemmelman@curtis.com

*Attorneys for Defendant*
*LoopNet, Inc.*

*Of Counsel:*

Elliot Brown (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
Tel.: (310) 277-1010
Fax: (310) 203-7199
ebrown@irell.com