Steven A. Zalesin (SZ 0901)
Karla G. Sanchez (KS 7247)
Adeel A. Mangi (AM 5322)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

Patrick J. Carome (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000

Attorneys for CoStar Group, Inc. and CoStar Realty Information, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COSTAR GROUP, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>LOOPNET, INC.,<br><br>    Defendant. | Civil Action No. 08-CV 1156 (GWG)<br><br>**ANSWER TO LOOPNET'S AMENDED**<br>**COUNTERCLAIMS** |
| LOOPNET, INC.,<br><br>    Counterclaim Plaintiff,<br><br> v.<br><br>COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC.<br><br>    Counterclaim Defendant. | |

1894033v.1

Plaintiff-Counterclaim Defendant CoStar Group, Inc. and Counterclaim Defendant CoStar Realty Information, Inc. (collectively, "CoStar"), for their Answer to the Counterclaims of Defendant-Counterclaim Plaintiff LoopNet, Inc. ("LoopNet"), state as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admit that CoStar advertises, promotes, offers for sale and sells information-related services to residents of New York and this District.  CoStar is without sufficient information to answer the remaining allegations of paragraph 4 of LoopNet's Counterclaims and therefore denies the same.

5. Admitted.

6. Admitted.

7. CoStar admits that LoopNet operates a commercial service at www.loopnet.com.  CoStar denies that LoopNet operates the leading online commercial real estate marketplace and denies that LoopNet.com has become the preeminent site for real estate professionals to market their commercial real estate listings.  CoStar is without sufficient information to answer the remaining allegations of paragraph 7 of LoopNet's Counterclaims and therefore denies the same.

8. CoStar denies that LoopNet offers real estate professionals the opportunity to receive unmatched online exposure for their commercial real estate listings.  CoStar denies that LoopNet's Premium Listings are accessible to 2.75 million registered LoopNet members.  CoStar denies that LoopNet.com is the most heavily trafficked commercial real estate website by a wide margin.  CoStar is without sufficient information to answer the remaining allegations of paragraph 8 of LoopNet's Counterclaims and therefore denies the same.

9. CoStar is without sufficient information to answer the allegations of paragraph 9 of LoopNet's Counterclaims and therefore denies the same.

10. CoStar denies that LoopNet contains a feature called "Showcase Property Listings," or that LoopNet uses the term "Showcase" in any way that could be considered a trademark use. CoStar is without sufficient information to answer the remaining allegations of paragraph 10 of LoopNet's Counterclaims and therefore denies the same.

11. CoStar admits that it offers a product named CoStar Commercial MLS® and that such product was launched in 2005. CoStar denies the remaining allegations of paragraph 11 of LoopNet's Counterclaims.

12. CoStar admits that it has developed and launched a product called CoStar Showcase. CoStar denies the remaining allegations of paragraph 12 of LoopNet's Counterclaims.

13. CoStar admits that CoStar advertises its CoStar Showcase product. CoStar denies the remaining allegations of paragraph 13 of LoopNet's Counterclaims.

14. CoStar is without sufficient information to answer the allegations of paragraph 14 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data and therefore denies the same.

15. CoStar is without sufficient information to answer the allegations of paragraph 15 of LoopNet's Counterclaims related to LoopNet's alleged rights to distribute listings to newspaper websites and therefore denies the same. CoStar denies that the retail price for CoStar Showcase is higher than the cost of marketing a listing with LoopNet's services.

16. CoStar admits that customers would not want to pay significantly more for an inferior product, which is reflected in the large cancellation rate that LoopNet has experienced

over the last few quarters as compared to the high adoption rate CoStar Showcase has enjoyed. CoStar denies the remaining allegations of paragraph 16 of LoopNet's Counterclaims.

17. CoStar admits that it has conducted advertising for its Showcase product and the content of that advertising speaks for itself when read in context. CoStar denies the remaining allegations of paragraph 17 of LoopNet's Counterclaims.

18. CoStar admits that it commissioned comScore to conduct a custom analysis for the fourth quarter of 2007 and that some of its advertising claims are based on that custom analysis. CoStar denies the remaining allegations of paragraph 18 of LoopNet's Counterclaims.

19. CoStar admits that comScore is a source of panel-based data. CoStar denies the remaining allegations of paragraph 19 of LoopNet's Counterclaims.

20. Denied.

21. CoStar admits that comScore uses statistical methods to extrapolate from its panels of Internet users and has provided such extrapolated numbers to both CoStar and LoopNet, which also relies upon and widely publicizes comScore's extrapolated numbers. CoStar denies the remaining allegations of paragraph 21 of LoopNet's Counterclaims.

22. CoStar admits that comScore's standard traffic estimates that are available on a commercial basis typically are not limited to visits to CoStar for the purpose of viewing listings. CoStar denies the remaining allegations of paragraph 22 of LoopNet's Counterclaims.

23. CoStar admits that CoStar Showcase had not been launched as of the fourth quarter of 2007. CoStar denies the remaining allegations of paragraph 21 of LoopNet's Counterclaims.

24. Denied.

25. Denied.

1894033v.1

26. Denied.

27. CoStar admits that comScore makes available a product called "Media Metrix" that purports to track unique monthly visitors based on comScore's methodology, that is comprised of a panel biased towards home Internet users rather than those who use the Internet at the office, which itself may cause an understatement of traffic to CoStar's website relative to LoopNet's website. Because comScore's Media Metrix figures are available independently to comScore's subscribers, the figures speak for themselves. CoStar denies that LoopNet has provided the exact numbers from comScore's reports. CoStar denies the remaining allegations of paragraph 27 of LoopNet's Counterclaims.

28. Denied.

29. CoStar admits that it issued a piece of direct mail advertising that contained the claim that CoStar's website is visited by "400,000 prospects each month that you won't find on LoopNet," which was the subject of a corrective mailing sent to the same individuals within a week. CoStar denies the remaining allegations of paragraph 29 of LoopNet's Counterclaims.

30. CoStar admits that it has made the claim, based on third party conducted research, that 86% of visitors to the CoStar website are "purchase decision makers and influencers for their firm." CoStar denies the remaining allegations of paragraph 28 of LoopNet's Counterclaims.

31. Denied.

32. CoStar admits that comScore's estimates of traffic to CoStar's website includes visits by persons who do not subscribe to CoStar's subscription services. CoStar denies the remaining allegations of paragraph 32 of LoopNet's Counterclaims.

33. CoStar admits that it has made the claims, based on third party conducted research, that "75% of commercial real estate brokers prefer CoStar information products over other information sources" and that it is "[t]he website brokers prefer 3 to 1." CoStar denies the remaining allegations of paragraph 33 of LoopNet's Counterclaims.

34. CoStar admits that its references to the fact that 75% of commercial real estate brokers prefer CoStar information products to other sources, such as LoopNet, is sourced to a "blind survey amongst top 500 U.S. brokerage firms conducted by CSRS in December 2007." CoStar admits that the survey was conducted in December 2007, and that CoStar has not revealed the number of survey respondents, the survey questionnaire, or the margin of error of the third party survey. CoStar denies the remaining allegations of paragraph 34 of LoopNet's Counterclaims.

35. CoStar admits that it has sponsored advertising that truthfully states that 900,000 listings can be viewed using the Free Property Search tool on CoStar.com. CoStar denies the remaining allegations of paragraph 35 of LoopNet's Counterclaims.

36. Denied.

37. CoStar admits that it has described the visitors to CoStar.com as including qualified prospects who are interested in commercial real estate and that the visitors to CoStar.com include the types of individuals who would have an interest in commercial real estate listings. CoStar denies the remaining allegations of paragraph 37 of LoopNet's Counterclaims.

38. Denied.

39. CoStar admits that it has issued marketing stating that CoStar Showcase presents CoStar commercial property listings to an even larger audience of online prospects than the

CoStar Property database. CoStar further admits that CoStar Showcase offers a number of advantages over other online marketing services. CoStar further admits that it has separately stated that CoStar Showcase offers a true competitive advantage. CoStar admits that CoStar Showcase is a better way to reach more prospects and generate more leads. CoStar denies the remaining allegations of paragraph 39 of LoopNet's Counterclaims.

    40.    Denied.

    41.    Denied.

    42.    CoStar admits that it has made a number of statements in its advertising for the CoStar Showcase product that are quoted out of their direct context by LoopNet in paragraph 42 of LoopNet's Counterclaims. CoStar denies LoopNet's allegations concerning those out-of-context quotations. CoStar denies the remaining allegations of paragraph 42 of LoopNet's Counterclaims.

    43.    Denied.

    44.    Denied.

    45.    Denied.

    46.    CoStar is without sufficient specific information as to the source or the context of the "public admission" described in paragraph 46 of LoopNet's Counterclaims and therefore denies the same. CoStar denies the remaining allegations of paragraph 46 of LoopNet's Counterclaims.

    47.    CoStar is without sufficient information to answer the allegations of paragraph 47 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data, which otherwise contradict LoopNet's public statements, and therefore denies the same. CoStar denies the remaining allegations of paragraph 47 of LoopNet's Counterclaims.

48.    Denied.

49.    CoStar denies that CoStar widely disseminated a statement in February 2008 quoting LoopNet's CEO Richard Boyle.   CoStar admits that it disseminated a press release in March 2008 quoting Richard Boyle for having admitted that certain of LoopNet's advertising claims were false or misleading, thus verifying CoStar's false advertising claims against LoopNet.  CoStar denies the remaining allegations of paragraph 49 of LoopNet's Counterclaims.

50.    CoStar admits that its March 2008 press release contains the phrase "does not believe this to be accurate."  CoStar denies the remaining allegations of paragraph 50 of LoopNet's Counterclaims.

51.    CoStar admits that its March 2008 press release contains the phrases "appeared to be", and "log in to LoopNet every month," which are quoted out of context by LoopNet in paragraph 51 of LoopNet's Counterclaims.  CoStar further admits that its March 2008 press release contains the text "the number of people who actually signed into LoopNet was 420,243 *for the last three months* of 2007 – in total – or less than half the number of users claimed by Mr. Boyle *for one month*."  CoStar denies the remaining allegations of paragraph 51 of LoopNet's Counterclaims.

52.    Denied.

53.    CoStar is without sufficient specific information as to the source or context of the alleged public statements made by CoStar and therefore denies the same.  CoStar denies the remaining allegations of paragraph 53 of LoopNet's Counterclaims.

54.    CoStar denies that any statements concerning the fact LoopNet's traffic has been shrinking would be either false or misleading.  CoStar denies the remaining allegations of paragraph 54 of LoopNet's Counterclaims.

1894033v.1

55. CoStar is without sufficient information to answer the allegations of paragraph 46 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data and therefore denies the same. CoStar denies the remaining allegations of paragraph 55 of LoopNet's Counterclaims.

56. CoStar is without sufficient information to answer the allegation of paragraph 56 of LoopNet's Counterclaims that "much of LoopNet's site is open to the public without requiring any login" and therefore denies the same. CoStar admits that LoopNet has maliciously and frivolously filed a complaint against CoStar in California in breach of LoopNet's covenant not to sue CoStar. CoStar further asserts and incorporates its defenses to LoopNet's specious claims in such litigation to the extent that LoopNet reasserts those claims. CoStar is without sufficient information to answer the allegation of paragraph 56 of LoopNet's Counterclaims that "thousands of LoopNet members and non-members alike . . . come to LoopNet's website each month and search and view real estate listings without 'logging in'" and therefore denies the same. CoStar specifically denies the allegation that "apparently untold numbers of CoStar employees [] come to LoopNet's website each month and search and view real estate listings without 'logging in'." CoStar denies the remaining allegations of paragraph 56 of LoopNet's Counterclaims.

57. CoStar admits that it has stated, based on third party data, that only 420,243 visitors to the LoopNet website logged in to the LoopNet website in the fourth quarter of 2007. CoStar denies the remaining allegations of paragraph 57 of LoopNet's Counterclaims.

58. CoStar is without sufficient specific information as to the source and context of CoStar's alleged admission and therefore denies the same. CoStar denies the remaining allegations of paragraph 58 of LoopNet's Counterclaims.

1894033v.1

59.   Denied.

60.   CoStar admits that it has stated, based on third party data, that its website received over 625,000 unique visitors in the fourth quarter of 2007 and that its website received over 2.4 million total visitors in the fourth quarter of 2007.  CoStar is without sufficient specific information to identify the specific claims LoopNet is alleging CoStar has made concerning traffic to its website and therefore denies the same.  CoStar denies the remaining allegations of paragraph 60 of LoopNet's Counterclaims.

61.   CoStar is without sufficient information to answer the allegations of paragraph 61 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data and therefore denies the same.  CoStar denies the remaining allegations of paragraph 61 of LoopNet's Counterclaims.

62.   Denied.

63.   Denied.

64.   CoStar admits that in certain contexts comScore provides estimates of website traffic.  CoStar denies the remaining allegations of paragraph 64 of LoopNet's Counterclaims.

65.   CoStar admits that it stated that LoopNet's CEO has falsely and misleadingly cited comScore data.  CoStar admits that it has used comScore data concerning quarterly unique visitors to its website in CoStar's advertising for CoStar Showcase.  CoStar denies the remaining allegations of paragraph 65 of LoopNet's Counterclaims.

66.   CoStar admits that it has contrasted the statements of LoopNet's CEO with the truth, and that LoopNet's apparent perception that Richard Boyle is being called a "liar" arises from LoopNet's perception of that same contrast.  CoStar denies the remaining allegations of paragraph 66 of LoopNet's Counterclaims.

1894033v.1

67.     CoStar is without sufficient information to answer the allegations of paragraph 67 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data and therefore denies the same.  CoStar denies the remaining allegations of paragraph 67 of LoopNet's Counterclaims.

68.     CoStar admits that it engaged in a new advertising campaign near the time of the launch of CoStar Showcase.  CoStar further admits that it has claimed, based on third-party website visitation analysis tools, that the unique CoStar.com visitor count in the first quarter of 2008 was over 1.3 million.  CoStar denies the remaining allegations of paragraph 68 of LoopNet's Counterclaims.

69.     CoStar is without sufficient information to answer the allegations of paragraph 69 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data and therefore denies the same.   CoStar denies the remaining allegations of paragraph 69 of LoopNet's Counterclaims.

70.     CoStar admits that it has stated that the CoStar Showcase product has been met with a "tremendous market reception" and that it separately stated that it has received over $1 million, $2 million and then $3 million in subscription orders for CoStar Showcase.  CoStar further admits that a subtitle of one of its press releases that more fully discusses the launch of CoStar Showcase stated that "More Than 300 Firms Find that New Online Marketing Service Delivers on Promise to Provide Enhanced Property Exposure and More Qualified Lead-Generation."  CoStar further admits that the same press release quotes CoStar's CEO, Andrew Florance, as stating that "We believe CoStar Showcase offers a better solution, and we couldn't be more pleased with the market response for our new online marketing service. While some of these contracts include a trial period and an option to cancel, the response to date clearly

indicates these clients find CoStar Showcase to be a very compelling and effective solution for marketing their listings online." CoStar denies the remaining allegations of paragraph 70 of LoopNet's Counterclaims.

71.  CoStar admits that it has stated that some of its CoStar Showcase contracts include a trial period and an option to cancel. The number of such contracts subject to a trial period and an option to cancel is confidential. CoStar believes that LoopNet's allegations that "at least half" of the CoStar Showcase contracts is subject to a trial period and option to cancel is made without any factual support in violation of the federal rules in an effort by LoopNet, through counsel, to obtain CoStar's confidential business information from CoStar's either denial or admission of that allegation. Accordingly, on that basis, CoStar withholds any response to LoopNet's allegation pending the entry of an appropriate protective order relating to the use of confidential information. CoStar denies the remaining allegations of paragraph 71 of LoopNet's Counterclaims.

72.  CoStar admits that its CEO is quoted in a press release as having stated that "Based on the enthusiastic response CoStar Showcase received at ICSC, and continued strong interest from our clients, it's clear there is substantial demand among commercial property professionals for a more effective way to market their property listings online." CoStar denies the remaining allegations of paragraph 72 of LoopNet's Counterclaims.

73.  CoStar admits that Andrew Florance is quoted in a June press release as having stated "We believe CoStar Showcase offers a better solution, and we couldn't be more pleased with the market response for our new online marketing service." CoStar further states that it is without sufficient information to answer the allegations of paragraph 73 of LoopNet's Counterclaims related to LoopNet's analysis of unidentified comScore data and therefore denies

1894033v.1

the same.  CoStar admits that its former Vice President of Sales and Customer Service is no longer with the company.  CoStar denies the remaining allegations of paragraph 73 of LoopNet's Counterclaims.

74. CoStar admits that the CoStar News service released an article that contained a subtitle stating "Introducing CoStar Showcase, the Better Way to Reach More Prospects and Generate More Leads from Your Online Listings," but denies that the same article contains the specific phrase "better way to market your listings online."  CoStar further admits that the same article states "Ever notice how other listing websites put up roadblocks before visitors can view your listings?"  CoStar further admits that the article contains the statement "Take Advantage of the First Truly OPEN Marketing Platform for Commercial Real Estate."  CoStar denies the remaining allegations of paragraph 74 of LoopNet's Counterclaims.

75. CoStar specifically denies that CoStar Showcase is not free to Internet users searching for commercial real estate properties, and any allegation by LoopNet to the contrary is asserted without basis.  CoStar further specifically denies that CoStar Showcase is "available only to persons who have already signed up for other expensive CoStar services," and any allegation by LoopNet to the contrary is asserted without basis.   CoStar denies the remaining allegations of paragraph 75 of LoopNet's Counterclaims.

76. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

1894033v.1

- 14 -

81. Denied.

82. Denied.

83. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

84. CoStar admits that the CoStar Showcase marketing product directly competes with LoopNet's principle marketing product, i.e., the pay-for-listing service available through www.loopnet.com.

85. CoStar admits that it offers its services in interstate commerce. CoStar denies the remaining allegations of paragraph 85 of LoopNet's Counterclaims.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

94. CoStar admits that LoopNet offers a platform for marketing real estate listings, and that LoopNet also offers a product that allows the display of real estate listings on websites other than LoopNet's own website. CoStar denies the remaining allegations of paragraph 94 of LoopNet's Counterclaims.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. CoStar admits that it uses the trademark "CoStar Showcase" in commerce in connection with a service for marketing commercial real estate listings through the Internet. To the extent further response is required, CoStar denies the remaining allegations of paragraph 99 of LoopNet's Counterclaims.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

107. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

1894033v.1

- 16 -

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. CoStar incorporates by reference and reasserts each and every response to paragraphs 1-75 of LoopNet's Counterclaims as set forth fully herein.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

- 17 -

135. Denied.

136. Denied.

137. Denied.

138. Denied.

### FIRST AFFIRMATIVE DEFENSE

LoopNet's Counterclaims fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

LoopNet's Counterclaims are barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

LoopNet's Counterclaims are barred by estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The word "showcase" is generic and therefore unprotectable under trademark law.

### FIFTH AFFIRMATIVE DEFENSE

LoopNet's Counterclaims are barred by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE

LoopNet's trademark claims are barred by the doctrine of trademark misuse.

Dated: July 28, 2008

                                                Respectfully submitted,

/s/ Steven A. Zalesin
Steven A. Zalesin
Karla G. Sanchez
Adeel A. Mangi
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

Patrick J. Carome
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone 202-663-6000
Facsimile 202-663-6363

Attorneys for CoStar Group, Inc. and
CoStar Realty Information, Inc.

Of counsel:

    Christopher Winters, Esq.
    CoStar Group, Inc.

- 18 -

1894033v.1