Jacques Semmelman (JS 5020)
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
Tel: 212-696-6000
Fax: 212-697-1559
*Attorneys for Defendant and Counterclaim Plaintiff LoopNet, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

COSTAR GROUP, INC.,

                Plaintiff,    :    No. 08-CV-1156 (GBD) (GWG)

        v.

LOOPNET, INC.,

                Defendant and
                Counter-Plaintiff

------------------------------------------------------------- X

LOOPNET, INC.,

                Counterclaim
                Plaintiff,

        v.

COSTAR GROUP, INC., and COSTAR REALTY
INFORMATION, INC.,

                Counterclaim
                Defendants.

------------------------------------------------------------- X

**LOOPNET'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

                                                                                                                   Page #
**TABLE OF AUTHORITIES** ................................................................................................ ii
**PRELIMINARY STATEMENT** ....................................................................................... 1
**ARGUMENT** ......................................................................................................................... 2

I.  CoStar Has Failed To Rebut LoopNet's Showing That CoStar's Advertising Is False ............................................................................................................................. 2

    A.  CoStar's False Statement That It Has "400,000 Prospects You Won't Find On LoopNet" .................................................................................................. 2

    B.  CoStar's False Statement Of "1.3 Million Unique Visitors Each Quarter" ............ 4

    C.  CoStar's False Statements About Showcase's Audience ....................................... 4

    D.  CoStar's False Statement About Showcase's Listings .......................................... 6

    E.  CoStar's False Statement That 300 Firms "Find" Showcase "Delivers" On Its "Promise" ..................................................................................................... 6

    F.  CoStar's False Statements That Users "Reach More Prospects" And "Generate More Leads" ................................................................................... 6

    G.  CoStar's False Comparative Descriptions Of Showcase ....................................... 7

II. CoStar's Disclaimers Are Admissions That Its Advertising Statements Are Baseless ........................................................................................................................... 9

**CONCLUSION** .................................................................................................................... 11

# TABLE OF AUTHORITIES

Page #

**Cases**

*Am. Home Prods. Corp. v. Johnson & Johnson*,
654 F. Supp. 568 (S.D.N.Y. 1987) .................................................................................. 10

*Bologna v. Allstate Insurance Co.*,
138 F. Supp. 2d 310 (E.D.N.Y. 2001) ............................................................................... 9

*Castrol, Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993) .............................................................................................. 8

*Gillette Co. v. Wilkinson Sword, Inc.*,
89 CV 3586 (KMW), 1991 U.S. Dist. LEXIS 21006 (S.D.N.Y. Jan. 9, 1991) ................. 9

*In re Interactivecorp Sec. Litig.*,
478 F. Supp. 2d 574 (S.D.N.Y. 2007) ............................................................................. 10

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) ................................................................................................ 8

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson*,
906 F. Supp. 178 (S.D.N.Y. 1995) .................................................................................. 10

*Time Warner Cable v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) .............................................................................................. 8

**Statutes**

Private Securities Litigation Reform Act of 1996 ........................................................ 10

15 U.S.C. § 77z-2 ............................................................................................................. 10

**PRELIMINARY STATEMENT**

Counterclaim-Plaintiff LoopNet, Inc. ("LoopNet") respectfully submits this Reply Memorandum of Law in further support of its motion for a preliminary injunction.

CoStar has failed to rebut LoopNet's showing of entitlement to a preliminary injunction. If anything, CoStar's opposition underscores that CoStar is deliberately engaging in a campaign of false advertising. CoStar is unable to substantiate, inter alia: (i) that it has "400,000 Prospects You Won't Find On LoopNet"; (ii) that it receives "1.3 Million Unique Visitors Each Quarter"; (iii) that 86% of the visitors to CoStar Showcase are "purchase decision makers and influencers for their firm"; and (iv) that CoStar Showcase allows users to "view 900,000 property listings." And CoStar does not even attempt to support its advertisement that each of the more than 300 firms that have signed up for a free trial "find" that Showcase "delivers on [its] promise to provide enhanced property exposure and more qualified lead generation." These are false advertisements. CoStar should be enjoined from making them.

CoStar's statements of purported superiority to LoopNet are likewise false. CoStar is reduced to arguing its empirical claims of superiority to LoopNet are mere puffery, i.e., unrealistic exaggerations of reality that can only be understood by consumers as expressions of opinion. But the words of CoStar's advertisements, in context, belie this position. On their face, CoStar's advertisements are statements of purported fact that represent to the consumer that CoStar is superior to LoopNet, its sole significant competitor, in specific ways. Those statements are simply *false*, not puffery.

CoStar's opposition offers virtually nothing in the nature of a defense—let alone establishes a valid defense, such as *truth*. CoStar is engaging in a campaign of false advertising that targets LoopNet. CoStar must be stopped. The Court should grant LoopNet's motion and issue a preliminary injunction.

# ARGUMENT

## I. CoStar Has Failed To Rebut LoopNet's Showing That CoStar's Advertising Is False

In response to LoopNet's showing that CoStar's advertising is replete with falsehoods, CoStar engages in distortions and evasions in an attempt to forestall a preliminary injunction that is necessary to put the brakes on CoStar's campaign of false advertising. All of CoStar's bobbing and weaving does not alter the fundamental fact that its advertising is false.

### A. CoStar's False Statement That It Has "400,000 Prospects You Won't Find On LoopNet"

CoStar advertises that "Your listings can be seen by over 400,000 prospects that you won't find on LoopNet." (Exs. H, L) By necessary implication, CoStar's advertising means CoStar has surveyed users of Showcase and verified they include 400,000 "prospects" who declared they do not and will not use LoopNet. This statement is false in at least five respects.

First, the necessary implication that CoStar verified this advertised advantage over LoopNet by actually surveying Showcase users to ascertain they were "prospects" and avowed non-users of LoopNet is false. Rather, CoStar's sole source is comScore data which merely estimated "unique visitors" to websites during one quarter.[1] (Kimball Decl. ¶ 12)

Second, the necessary implication that CoStar obtained information from 400,000 individuals is false. CoStar concedes comScore merely extrapolated an estimated number of "unique visitors" from a small panel, a technique CoStar further concedes can produce "large apparent shifts" in numbers even when in reality the true number of panel members involved is

---

[1] CoStar claims that confidentiality concerns prevent it from providing the survey documents and traffic data that purportedly substantiate its advertising statements. (CoStar Mem. 6 n.2) CoStar has not attempted to submit this evidence under seal. Moreover, CoStar cites no legal authority that allows CoStar to withhold this key evidence from the Court and from LoopNet and still claim the benefits of that evidence. CoStar's failure to submit this putative evidence with its opposition prejudices LoopNet's ability to fashion a complete reply at this time. LoopNet reserves the right to respond to CoStar's survey documents and traffic data if they are provided by CoStar.

"small." (Kimball Decl. ¶ 6) The 400,000 number could be wildly off as an estimate, and in any event falsely mutates an *extrapolation* into supposed real individual, alleged prospects.

Third, the 400,000 figure is based on data from one quarter—and not even the most recent quarter, during which comScore reports CoStar traffic has steadily declined. (Ex. A) Even if a comScore panel member did not visit LoopNet in that quarter, it does not mean that either that individual or the hundreds of thousands of "unique visitors" extrapolated to arrive at the 400,000 total will *never* be found on LoopNet. CoStar's categorical statement is baseless even as to the small number of comScore panel members, and a complete fiction as to the extrapolated 400,000 prospects.

Fourth, CoStar's advertisement refers to 400,000 "prospects." comScore does not evaluate whether its panel members are "prospects" or merely web surfers who happened upon the CoStar website. 400,000 unique visitors is not the same thing as 400,000 "prospects."

Fifth, the advertisement necessarily conveys that CoStar's audience is larger than LoopNet's by 400,000 users. That is false. comScore data reflects that *over two million* unique quarterly visitors typically use LoopNet but do not visit CoStar during the same quarter, a critical fact which CoStar's advertising omits. (*Compare* Ex. D *with* Exs. H-J, L) CoStar concedes that "there are other unique visitors to LoopNet who do not also visit CoStar," but tries to justify its deception with the comment that CoStar "is not in the business of drafting LoopNet's marketing copy." (CoStar Mem. 8) LoopNet is not asking CoStar to draft LoopNet's marketing copy. All CoStar must do is advertise truthfully. It refuses to do that, and it should be enjoined.[2]

---

[2] The statement is false for the additional reason that it purports to describe the audience for CoStar Showcase, even though the survey on which is based was conducted *before* CoStar Showcase was launched. *See* Section C.

-3-

B.   CoStar's False Statement Of "1.3 Million Unique Visitors Each Quarter"

CoStar concedes this statement is unsupported by comScore data. (Kimball Decl. ¶ 17) CoStar says the 1.3 million figure is supported by something entirely different—Omniture data for just *one* quarter, Q1 2008. (*Id.*) CoStar's advertisement is false in at least two respects.

First, CoStar's advertisements use the word "each." (Exs. H-J, L) That is false. Even unimpeachable data (which this is not) that pertains to one quarter cannot support the statement that the data applies to "each" quarter. As justification for this falsehood, CoStar lamely asserts that it "fully expects the overall trend for 2008 to be upward." (Kimball Decl. ¶ 18) That expectation, however intensely wished for, does not render CoStar's statement about "each" quarter truthful. Moreover, the empirical evidence shows this expectation is unjustified. CoStar's visitor traffic has declined steadily since February 2008. (Ex. A)

Second, CoStar admits that Omniture "can double count a 'unique' visitor." (Kimball Decl. ¶ 8) CoStar does not reveal this essential fact in its advertising. Rather, CoStar flatly and falsely tells the public it receives "1.3 million unique visitors." (Exs. H-J, L) Since the software used to calculate that number concededly double-counts visitors, the true number of unique visitors is necessarily less than 1.3 million. CoStar's statement is false, and should be enjoined.[3]

C.   CoStar's False Statements About Showcase's Audience

CoStar's advertising for Showcase uses information that refers to CoStar as a whole, and falsely presents it as if it specifically describes Showcase. (Exs. I, N)

In opposition, CoStar argues that there is only one "CoStar" website, and that Showcase is merely a "tool" among many others on that website. (CoStar Mem. 4, 5) This is

---

[3] CoStar also engages in a bait-and-switch tactic. In a deceptive effort to make it appear that its user base is growing rapidly (from 625,000 to 1.3 million), CoStar has tacitly switched its metric from comScore, a conservative measure, to Omniture, which double counts. This has enabled CoStar to create the illusion of explosive growth. (*Compare* Exs. H-J *with* Exs. M-O)

-4-

disingenuous. On the one hand, when it suits CoStar's tactics, CoStar emphasizes the uniqueness of Showcase and how its May 2008 launch was an epic event that transformed the market. (Ex. II at ¶¶ 2, 9; Ex. HH at 1) On the other hand, when tactics require CoStar to characterize Showcase as simply a "tool" among many others scattered throughout the CoStar website, CoStar conveniently resorts to that characterization.

One glance at CoStar's website cuts through the double-talk. Under the heading "**CoStar Showcase Audience: Prospect Quantity and Quality**" are the words "When you advertise your properties on CoStar Showcase, you are opening up your listing to an active motivated marketplace: . . ." (Exs. I, N) Below that are statements regarding the quantity and quality of the CoStar Showcase audience, including:

"**86%** are purchase decision makers and influencers for their firm"

(Exs. I, N) (emphasis in original). This statement is false. The survey on which the statement is based was conducted *prior* to Showcase's release, as CoStar now concedes. (Kimball Decl. ¶ 24) Thus, the survey cannot and does not relate to Showcase.[4]

CoStar pretends that the "profile[]" of CoStar's audience at the time of the survey matches that of Showcase now. (*Id.*) That is not possible. Showcase is a free service intended to reach a broader audience than CoStar's prior subscription-only services. (Ex. GG at 7) CoStar admits that "CoStar Showcase is free to search. This is what renders it *different* from CoStar's prior listings service . . . which only paid subscribers could use to search for properties." (*Id.* at ¶ 31) (emphasis added). CoStar's contention that there is no difference between the audience for CoStar's pay services and for Showcase is thus repudiated by CoStar's

---

[4] CoStar has withheld its survey documents. Thus, LoopNet cannot confirm, even with respect to CoStar as a whole, that the surveys support this statement, as well as other statements, such as "75% of commercial real estate brokers prefer CoStar information products over other information sources." (Exs. I, N) LoopNet reserves its rights.

-5-

representations to the contrary. CoStar's false advertisement that 86% of CoStar Showcase users "are purchase decision makers and influencers for their firm" should be enjoined.

    D.    <u>CoStar's False Statement About Showcase's Listings</u>

CoStar advertises that Showcase allows users to "view 900,000 property listings." (Exs. P, Q, R) This is false. CoStar's entire database, according to its CEO, has about 900,000 listings. (Ex. GG at 5) But Showcase does not allow access to the totality of CoStar's listings—only to a fraction. Showcase users are only able to access Showcase listings (i.e., a subset of CoStar's database), with the remainder of the properties viewable not as "listings" but as mere *stubs*—teasers that withhold the address, description, and most other vital information concerning the property. (Ex. U) CoStar's advertisement is false and should be enjoined.[5]

    E.    <u>CoStar's False Statement That 300 Firms "Find" Showcase "Delivers" On Its "Promise"</u>

LoopNet's motion seeks a preliminary injunction with respect to CoStar's false statement that each of the more than 300 firms that have signed up for a free trial of Showcase "find" that Showcase "delivers on [its] promise to provide enhanced property exposure and more qualified lead generation." (Ex. Y at 1) (capitalization standardized). CoStar's opposition does not even attempt a response. The Court should enjoin this false statement.

    F.    <u>CoStar's False Statements That Users "Reach More Prospects" And "Generate More Leads"</u>

CoStar's advertising states that Showcase users "Reach More Prospects" and "Generate More Leads[.]" (Exs. H-J, L-O) This is false. According to every reported metric, LoopNet's traffic dwarfs CoStar's. (Exs. A-D, F)

---

[5] Likewise, CoStar's statement that Showcase is "free" and "truly open" is false. (Exs. V, X) Most of what is available to search on a "free" or "open" basis are stubs, not listings. (Ex. U) And listing with Showcase is not "free" in any sense.

CoStar argues that its statements "are not comparative in nature and in reality have nothing to do with LoopNet. The ads simply point out the unassailable truth that sellers can enhance their marketing and access an additional audience for their properties by using Showcase." (Kimball Decl. ¶ 34) CoStar's advertising demonstrates the falsity of this explanation. After proclaiming "Reach More Prospects," these advertisements use the word "prospect" again: "Your listings can be seen by over 400,000 prospects that you won't find on LoopNet." (Exs. H-J, L-O) The conclusion is inevitable: CoStar users "reach more prospects"—by some 400,000—than do LoopNet users. This is false, and should be enjoined.[6]

G.   CoStar's False Comparative Descriptions Of Showcase

CoStar dismisses its false comparative descriptions of Showcase to LoopNet's product as not actionable because the statements at issue constitute "mere 'puffery.'" (CoStar Mem. 15) (citation omitted). Among these are the statements that Showcase "offers a number of advantages *over other online marketing services*"; is "free from mislabeled, outdated or 'dead' listings *that clutter other online property search services*;" will "get the deal done *faster*;" is an "*unprecedented* way" to market;" "delivers on [its] promise to provide *enhanced* property exposure and *more* qualified lead generation;" and offers "*unmatched* exposure." (CoStar Mem. 14-15) (emphasis added). These statements are false.

In its opposition, CoStar does not offer any evidence, or even seriously argue, that these statements are *true*. Instead, CoStar argues that each of these statements is "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." (CoStar Mem. 15) (quoting cases). But these statements are

---

[6] Were this nothing more than an "unassailable truth," CoStar would not have gone to the effort of issuing a disclaimer that "there can be no assurance that CoStar Showcase will enable commercial real estate professionals to reach more prospects and generate more leads from their online property listings." (Ex. V at 2) There is no need to disclaim truth, much less "unassailable" truth.

neither vague nor expressions of opinion, especially in the context in which they appear. They are very specific comparative factual assertions of how CoStar Showcase is better than LoopNet.

CoStar's advertisements place these assertions in close proximity with false numerical statements, creating an inevitable false implication. For example, CoStar's advertisement headed "Introducing CoStar Showcase," falsely states "Reach . . . over 400,000 potential prospects you won't find on LoopNet." (Ex. L) (ellipsis in original). Next to this, CoStar states Showcase provides "*unmatched* exposure." (*Id.*) (emphasis added). Immediately below, CoStar continues: "CoStar Showcase is an all-new online marketing service that offers you an *unprecedented* way to get your listings in front of a vast new audience . . . The result? *More* reach, *more* leads, *more* opportunity to lease or sell your property *more* quickly than ever before." (*Id.*) (emphasis added). Below that—in case the consumer somehow missed it—CoStar *repeats* the falsehood that "Your listings can be seen by over 400,000 prospects that you won't find on LoopNet." (*Id.*) CoStar's parting comment is, "Start reaching *more* prospects and generating *more* leads today." (*Id.*) (emphasis added). The message is unambiguous: CoStar Showcase offers "more reach," "more opportunity to lease or sell," and "unmatched exposure" *compared to LoopNet*.

This is a carefully orchestrated use of fictitious numerical data in juxtaposition with specific assertions of superiority. This is not "puffery." This is deliberate false advertising.

The term "puffery" applies to "[s]ubjective claims about products, which cannot be proven either true or false." *Time Warner Cable v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)). Comparative advertisements of the kind published by CoStar are not puffery. *See Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 941, 945-46 (3d Cir. 1993) (advertisement that oil provided "better engine protection" was not puffery); *Gillette Co. v. Wilkinson Sword, Inc.*, 89 CV 3586 (KMW), 1991

-8-

U.S. Dist. LEXIS 21006, at *53-54 (S.D.N.Y. Jan. 9, 1991) (statement that device provides "smoothest, most comfortable shave possible" is not puffery, especially in juxtaposition with statement that it is "six times smoother" than other products).

An illustration of puffery may be found in *Bologna v. Allstate Insurance Co.*, 138 F. Supp. 2d 310 (E.D.N.Y. 2001), a case relied upon by CoStar (CoStar Mem. 16) in which the court found that "You're in good hands with Allstate" was "general, subjective, and cannot be proven true or false," and was therefore non-actionable "puffery." *Id.* at 323. Alternatively, puffery can be assertions that are "not even remotely realistic" such that no "consumer, whatever the level of sophistication, would actually be fooled by" them. *Time Warner Cable*, 497 F.3d at 161. By contrast, CoStar's statements, in context, are purportedly objective, yet false statements about the superior scope of CoStar's audience compared to LoopNet's. Labeling these falsehoods "puffery" is no defense. CoStar's advertisements are false and should be enjoined.

## II.    CoStar's Disclaimers Are Admissions That Its Advertising Statements Are Baseless

In fine print disclaimers in some (not all) of the relevant advertisements, CoStar admits it does not stand by the truth of its advertising. (Exs. V-W, Y-Z) CoStar's disclaimers constitute admissions that its advertisements are baseless.

CoStar argues its disclaimers are somehow not admissions because they are "industry standard." (CoStar Mem. 16) CoStar cites no "industry standard" exception to the rules of evidence. Undoubtedly, none exists. In any event, CoStar's fine print admissions that its advertisements are baseless are not industry standard. LoopNet, the other industry leader, does not disclaim its advertising.

Next, CoStar tries to convert what it once called a "straightforward false advertising case under the Lanham Act" (D.I. 49, Ex. X at 2) into a securities case. CoStar pretends that, because

of the safe harbor provisions of the PSLRA,[7] 15 U.S.C. § 77z-2, its disclaimers should not be treated as admissions or as evidence of CoStar's Lanham Act violations. CoStar even implies that it was somehow required under the PSLRA to issue its disclaimers. Thus, CoStar solemnly invokes a purported "requirement" of "meaningful cautionary statements," which "must" convey certain information, and about which courts have even issued "warnings about the need for specificity." (CoStar Mem. 17) CoStar then commends itself for doing "precisely what the drafters of the PSLRA had in mind," which CoStar lauds as "sound practice" that should be immune from use as evidence in a Lanham Act case. (*Id.* at 18)

None of this is true. No disclaimer is *mandated* by the safe harbor provision of the PSLRA. A company that *elects* to avail itself of the safe harbor provision of the PSLRA *may* issue disclaimers, and, if appropriate, receive protection from securities litigation. But the safe harbor provision of the PSLRA applies only to *forward-looking* statements. 15 U.S.C. § 77z-2. It does not apply where the "statement misrepresents present facts." *In re Interactivecorp Sec. Litig.*, 478 F. Supp. 2d 574, 586 (S.D.N.Y. 2007). The PSLRA's safe harbor provision is inapplicable to the statements at issue in this case, which are not forward-looking statements, but false statements of present fact. The PSLRA is simply irrelevant.

CoStar chose to disclaim its own advertising. CoStar's disclaimers constitute admissions that CoStar's advertising statements are baseless.[8]

---

[7] The Private Securities Litigation Reform Act of 1996.

[8] CoStar does not even attempt to mount a defense under false advertising law authority that its fine print admissions constitute disclaimers that provide a *defense* to LoopNet's false advertising claims. No false advertising case holds that the fine print admission in one advertisement has any ameliorating effect on false text in another advertisement that repeats the false statement without disclaimer. And no false advertising case holds that a fine print disclaimer that contradicts a material assertion in an advertisement—i.e., a disclaimer like CoStar's—mitigates or excuses a false advertisement. To the contrary, even disclaimers that merely qualified rather directly admitted their falsity have been held ineffective to overcome a violation of the false advertising laws. *See SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson*, 906 F. Supp. 178, 182 (S.D.N.Y. 1995); *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987).

## CONCLUSION

CoStar has failed to rebut LoopNet's showing of entitlement to a preliminary injunction. The Court should grant LoopNet's motion.

Dated: New York, New York
July 31, 2008

                              CURTIS, MALLET-PREVOST,
                              COLT & MOSLE LLP

By: _____
     Jacques Semmelman (JS 5020)
     Joshua Brook (JB 4555)
     101 Park Avenue
     New York, NY 10178-0061
     Tel.: 212-696-6000
     Fax: 212-697-1559
     jsemmelman@curtis.com

*Attorneys for Defendant and Counterclaim Plaintiff LoopNet, Inc.*

Of Counsel:

Elliot Brown (admitted pro hac vice)
Raymond LaMagna (admitted pro hac vice)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel.: (310) 277-1010
Fax: (310) 203-7199
ebrown@irell.com